The first two cases we've consolidated for purposes of argument, and I appreciate the parties' cooperation in that regard. The cases are 17-1962 and 17-1963, Natural Alternatives v. Iancu. Mr. Chambers. May it please the Court, I'm Scott Chambers for the Patent Owner. All parties agree that the relevant applications to consider in this case are the 4th, 5th, and 6th applications. On August 29, 2008, when the 6th application was filed, it met all three requirements of Section 120. And 120 says that when the requirements are met and the applicant asks for a priority, that it effectively steps into the shoes or effectively is given the priority back to the date that it's requested. Now, given the rest of 120, that means that when this application was filed on August 29, 2008, the 6th application was entitled to a priority of August 12, 1997. In its specification, the application asked for it on August 29. Now, what the solicitor and the patent owner disagree about is what the change in the 5th application that occurred several days later, it was already, after the... Before the application you're referring to issued, before the patent issued. The application for 6th was pending when the... The application for 6th was pending, Your Honor, but it had already satisfied all the requirements of Section 120. And while it was still satisfying all the sections of 120 that are required, and also asking for the priority, a change in another... So your view is that if there's one point in time in which the criteria are satisfied, even if it's before issuance of the patent, then it's vested. And by vesting, you mean that it's irrevocably... Not at all, Your Honor. No? Okay. We don't mean that it's irrevocable. We understand that an applicant can specifically ask for that to be revoked. And 120 says that an applicant can do that. But in fact, if you don't ask for it and you put the public on notice that you are claiming all the way back something happening in another application has no effect. In other words, on August 29th, when this application, when the 6th application was filed, and when it satisfied all requirements of 120 and asked for that priority, what happened on August 29th was it was effectively filed in 1997. It was filed, you know, far earlier, and that was something that it claimed and always claimed. Do you find that the PTO doesn't even evaluate whether you're actually entitled to priority unless there's some reason it has to, it just accepts the applicant's claims? Your Honor, the PTO, the MPEP, which is supposed to be the policy manual for the PTO, says that the examiner is supposed to look through that. When I was an examiner, I certainly looked through to see if there was additional material because I had to look at each claim and I had to decide if there's a CIP, does this claim go all the way back or only part the way back? But there's no written decision that's required at that point, right? There is no written aspect of the patent office to say that this is granted this priority or not. How do we know it happened or not? Your Honor, the public is on notice because the applicant asked for this. In other words, the applicant said I'm claiming all the way back to 1997, and then if it needs to be done at a later point, a court can go in and they can say, okay, well, did they have the support for the claims back in 1997? Because they're claiming they do. And so a court can do that at that point. There's no need for ---- But you're saying that the vesting, the so-called vesting, occurs when the applicant asks? We're saying that we ---- It's automatic? I mean, is that ---- It's automatic, Your Honor, when ---- The moment the application is filed and there's an ask, then the ---- Not at all, Your Honor. Okay. It vests when the criteria of 120 are satisfied. And those ---- As Judge Rayner mentioned, I mean, nobody's done that evaluation at that point in time, right? So what is the point in time? If it's not when the ask is, it's when what happens? Your Honor, the examiner or anyone in the public can look at that file, and they can tell if on August 29th did these claims that later issued satisfy all the criteria of 120. We do that all the time in the real world looking at particular patents. And if that is the case, and if it was requested, that is provided. The day you file your application, the PTO has ---- You suggested to me that under the MPEP they're supposed to look to see if there's written description support. But the day you file your application, they haven't had the opportunity to look yet, right? They have the opportunity, Your Honor, to look when it comes up for examination. And when it comes up for examination, they can look and see. But that's not the day it was filed. That's when ---- I mean, I think that maybe you have an argument on vesting, but it has to be when the patent issues because that's the period in time after which all of the relevant criteria will have been examined and validated. But I'm having trouble with your notion that you're entitled to it on the filing date itself. Your Honor, we're entitled to it as soon as the criteria of 120 are met. As Judge Lori said ---- But when are they met? I mean, I'm just trying to pin it down. You said it's not the moment that the application is filed. Your Honor, it is the moment the application is filed and they are met. Okay. I understand. In other words ---- And they were met. So how do we evaluate whether and they were met thing actually happened or whether ---- Your Honor, this happens all the time. You file an application and you claim that it's enabled, and then at some later point it gets challenged in district court and they say, oh, this wasn't enabled. That's fine. You know, until you show that it wasn't enabled, we're going to presume ---- Wait a minute. But when you file an application, then it goes through examination, so there's a determination by the examiner as to whether or not it's enabled or not, right? That is correct when it is examined. But that's long before it issues. Yes. In other words, Your Honor, this is no different than any aspect of law. When I file a contract, when I make a contract and they're both signed, that contract, even though it's not in front of a district court, it's a valid contract. This is not something particular. It's a patent law. You don't have a patent until it's issued, right? That is correct, Your Honor. But the way that the solicitor ---- In addition to what ---- I'm sorry. No, I'm done. I didn't mean to interrupt your question or his answer. But, I mean, in addition to what Chief Disprose is saying, priority can change after filing and regularly does through amendments or through claim changes, right? Every time an amended claim is filed, a new review has to be conducted and there may or may not be an entitlement to priority going back. I mean, so I feel as though entitlements to priority change regularly throughout prosecution. And that's why I'm having trouble with your vesting for everybody on the filing date as opposed to the issuance date. Your Honor, it is, according to the statute, it is entitled when the criteria of 120 are met. It doesn't say when it's examined. It doesn't say when it issues. It says when the criteria of 120 are met. Okay, we time out. Let me give you a hypothetical. Suppose that because when the 6th ---- I can't keep track of all these numbers. When the 6th application was filed, the 5th and the 4th were still pending at that time, I think, or at least the 4th or 5th. The 5th was, Your Honor. Okay, suppose that after the 6th was filed, since the 5th was still pending, suppose the inventors went in and actually amended the specification, which you can do, and they eliminated ---- wait, they eliminated material in the specification that would have been necessary to support the priority claim in the 6th application. They amended in the 5th? Yes. Oh, okay. That's what I'm asking. They amended it in the 5th. They did this after the 6th was filed. So as of the day the 6th was filed, it would have been entitled to a priority claim back through the 5th, through the 4th, through the 3rd, all the way back. But before the 6th issued and before the 5th issued, the 5th application was itself modified so that it no longer provided written description support for the 6th application. What happens then? Your Honor, the statute is pretty clear about that. When the criteria of 120 are met, the application effectively was filed in 1997. So it was effectively filed in 1997. So you're saying they get that claim of priority even though the 5th application no longer contains written description support? If they already were entitled to it and already requested it, absolutely, Your Honor. How is the public on notice of that? How does that provide adequate public notice? If the 6th claims priority to the 5th and it's clear the 5th doesn't disclose some of the things in the 6th application, is the public required then to go back through the prosecution history and figure out it used to be there but it's not there anymore? You are correct, Your Honor. And this court has many times said that a review of a patent that does not consider the prosecution history is not competent. And they have refused to embrace opinions of counsel where someone didn't look at the prosecution history. Of course you have to look at it. And that's what's required of the statute because it says when you file it and you meet these criteria, and as this court said in the ---- You might want to tone it down. You're pointing at me a lot and kind of yelling at me and it's honestly making me feel a little uncomfortable. Okay. I will certainly attempt to control that. When you are filing the application, once you've satisfied the criteria of 120, this court has said that the application shall, without exception, receive the benefit of the filing date. That means that when this was filed in 2008, that it was effectively filed, that it had the same effect as if it had been filed in 1997. So that when the fifth application came along later and was filed in 2003, well, at that point, it was already on file for six years. How could the fifth application, an entirely different application, have any effect on it? I mean, even the MPEP says it affects the instant application. It doesn't say it affects all applications in the claim. And when you look at what the statute 120 says, you find that it does not go back in time. This amendment occurred 11 years later. So that this, 11 years after 1997, according to 120, when this was filed, it effectively was filed in 1997. And then 11 years later, somebody changes an entirely different application. And that entirely different application says, I'm changing the priority of this application. But there is no evidence whatsoever that the sixth application was changed. And you're saying, OK, it goes back in time 11 years. So what are the negative consequences if we were to adopt the PTO position? Well, Your Honor, as our brief lays out, there are at least three. Let me go through them. The first is that the solicitor's position means that you could never sell an application if you have a daughter application. That's because the buyer could defeat the sale of the daughter application. And putting up roadblocks to sales and alienability is not in the best interest of the patent system. So you would have a problem with you can't sell any intermediate application because they might, you know, disclaim priority. You can sell it, but you put a condition in the contract, right, that says you can't change the priority claim. It seems like a very easily avoidable problem. You know, Your Honor, you can put that into the contract. And if they abide by the contract, you're in reasonably good shape. But the problem with that is that suppose they don't abide. Oh, now all of a sudden I'm going to go sue. Well, we can't use public policy to contend with or to take into account if there are violations of the rules or of the contract. That's a little harsh. Your Honor, I think the statute as it's set takes care of that. But the other problem that you would have is that suppose you file an application, and then you file a CIP, and that the examiner immediately says, oh, these claims with the new material in the CIP, they are claims that we're going to embrace, that I'm going to say that these are patentable because they have the new material. Well, normally in patent prosecution at that point you would say, oh, okay, I'm going to take this issuance, and I'm going to be able to show that I have a patent, and I will file a continuation and go after the subject matter that goes all the way back. Because I still want that. I just don't want to hold up the entire set of claims in the patent office for, you know, until it goes through the court and I have to appeal it. So you can take your claim to the CIP, and you can disclaim the unneeded priority, and you can get the longer term that the 1995 Act promises you. And then you can continue because you've already filed an established priority as 120 says you've effectively gone to that earlier date. Then you can file and seek claims to that broad subject matter. It seems like you just got through saying that it is revocable. Your Honor, it is revocable, but it's revocable when you claim it in that application. The solicitor's office has distorted what we've said. What does that do to your argument about vesting? Your Honor. If it's a vest, then it vests to all parties for all purposes. Not for all time, though. Why not? Why not for all time? Because 120 says you can disclaim it so that you can definitely disclaim it. And we know you can disclaim it, so what are the other negative consequences? You've given us one. Okay. I thought that was two, but, you know, the other negative consequence would be that the patent office, when we look at the other criteria of 120 as laid out in the Kunin Declaration and laid out in our briefs, you know, 1250 through 1260, talks about the fact that this nunk-pro-tunk aspect has already been decided by the Patent and Trademark Office in terms of inventorship. So if inventor A and inventor B, they file an application, and the one has invented a widget and the other one has invented a carburetor. It goes in, it gets filed. At some later point, they get allowance of the carburetor, and you can't have both inventors on the patent to the carburetor because inventor B invented one part and inventor A invented the other. What happens at that point is that you file an application and you say, I'm filing an application just to go after the widget, and that now I have two applications. They're both claiming the same priority date. They've effectively been claiming the priority. Now I cancel the inventorship in the first one so that it no longer says A and B. It only says, say, A, and then the other one now says B. If this goes back in time, that means that as soon as they cancel the inventorship, gee, it goes back in time, and all of a sudden I don't have co-inventorship. I'm not satisfying 120. In addition, there is a problem with it talks about pendency. So the applications have to be co-pending. Well, wait a minute. As soon as one is abandoned, now they're not co-pending. If this goes back in time, that messes that up too. So it's two aspects of 120 say you don't go back in time, and yet we're talking about this other aspect and saying, well, it should. The final point of 120 is talking about 112, and this court has already said in Hogan that in terms of satisfaction at 112, well, that's determined at the filing date. Does it matter that the cancellation with respect to the inventorship is involuntary, whereas what we're looking at here, the cancellation of a priority claim is voluntary? Not at all, Your Honor. In the Kunin Declaration that's at 120, it says, suppose then the patent office declaims a restriction. Okay, suppose they didn't. It doesn't matter because you do agree that inventorship is involuntary, and what we're looking here in this case is a voluntary cancellation of the priority claim. I would say that inventorship is involuntary, but you could have filed the application and not had separate patents unless it was restricted. Well, it's involuntary because it's required by the PTO. But it might not be restricted. So in the case you're describing, in the case in that declaration, it was part of a restriction requirement, but there's no reason to because you could also have the same exact scenario where A and B file something, and then you file a continuation with just B, and then you cancel B's inventorship on the first one. So it doesn't have to be required by the Patent and Trademark Office. It could be that, well, I decided that because I needed to get these claims out, somebody's infringing. I went after the claim of Mr. Inventor A first, and I can go after the claims of Mr. Inventor B at a later point. Okay. You've well dug into your rebuttal time. There's still a couple minutes. Let's hear from you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'd like to begin by addressing something that my friend across the aisle said. He seemed to suggest that the MPEP and the examiner somehow certify a benefit claim on the date that the benefit claim is made. In fact, that is not true. The examiner will look to a benefit claim statement to make sure that it meets the basic formalities. But to guarantee entitlement to priority, even the MPEP Section 216 provides that the subject matter of the application is not examined to determine whether the applicant is actually entitled to the benefit of the foreign or domestic filing date. Why can't it be just as a policy matter, just as that makes sense? You're right. So the determination is made somewhere down the road, the evaluation. But why can't that be backdated? Sort of like in a lot of other scenarios, like if you file something and if it turns out that all the certifications you've made at the filing were accurate, even if that's at a later time, you can go back to the filing date to be entitled. That happens in the veterans' cases where you go back to the filing of the claim, et cetera. So what's the problem with that? Well, I was addressing what counsel had said, but there is no problem. You're correct. In fact, that's exactly what Section 120 says, is that if it is right and somebody goes back and checks it later, it's all treated as if the effective filing date was of the first. So let me just segue to another point that was raised in some of Judge Moore's questions, which is the office's view that if the sixth application had issued as a patent before all of this other stuff happened, then he would be entitled to the back date. So you don't think the distinction to be drawn here is whether it was just an application or whether or not a patent had actually issued? I don't think as a general matter that's correct under this Court's precedent in Encyclopedia Britannica and in Medtronic, but I also don't think it's what the correct result would be in this Well, in this case it wasn't the case. That's a hypothetical. That's not this case where the patent had issued before the fifth application. I'm sorry. Even if that had happened in this case, there was something that happened during the prosecution of the sixth application that would indicate that that is incorrect. And what that was was – I'm going to step back and give some background for a second if I might. The attorney who filed and prosecuted the fourth, fifth, and sixth application and she also filed the seventh application, but the prosecution of that application and the filing and prosecution of the eighth application were done by different attorneys. So we have this same attorney, the attorney who amended the benefit claim in the fifth application. The examiner during the prosecution of the sixth application issued an obviousness type double patenting rejection against the sixth application, citing applications one through five. So all of the applications in the series. And important to what happened next is to know that the specification in the one through four application is shorter than the specification in the fifth application and onward, which includes different experimental data, et cetera. Is the specification – I'm sorry to interrupt, but is the specification the same for five and six? Yeah, the specification is the same for five, six, seven, and eight. So anyway, when she was faced with this ODP rejection, she filed 35 pages of response explaining how the invention claimed in the sixth application was patently distinct, in other words, not supported by 112, by applications one through four, and she filed a determined disclaimer over the patent that would eventually issue from application number five. So at least the – and this is the only contemporaneous evidence we have of intent and what was really going on here. At least the attorney who handled the prosecution of the fifth and the sixth application believed that applications one through four did not support the claims in the sixth application. And so for that reason, that's an additional reason that supporting our claim here and now, that there isn't 112 support, as required by section 120, for the claims in the sixth application. And although not examined for that sort of support in the seventh and eighth, but at least the attorney in the contemporaneous writings evidenced that at least even if we had your hypothetical, it still wouldn't – where, you know, the sixth application issued before. Okay. No, my hypothetical was really a hypothetical. I mean, there could be other circumstances, as you described, that may have resulted in a different change. I was just asking about the legal proposition. I mean, if we were to write an opinion here, would the government have us sort of go so broad as to say not just if the five is changed when six is still pending, but even if six issued under 120, it could still be changed at that time? I believe that would be the correct result. However, you don't need to go that far to resolve this case. But I do believe, looking at the opinions in Encyclopedia Britannica and in Medtronic, that that would be – and the court's interpretation of But, again, you don't need to go that far to resolve this case. Okay. So your friend makes the argument about a plain – kind of a plain meaning argument of Section 120. Is it your view that there's – it's not clear that there's enough ambiguity sort of baked into this language so that it's up to us – let's forget any Chevron deference or any of this stuff – but it's up to us to do it? Or is it your view – I mean, what is your view of the language? You can't be arguing that the language is clear and it says no – answers no to his question, right? Well, I think this court already answered that question in Encyclopedia Britannica where it was a case of first – the court said this was a case of first impression and the court would have to interpret the statute. And so to me that indicates that at least this court doesn't believe the statute is clear and I don't have authority to say whether the agency thinks that the statute is clear or not. But certainly we don't disagree with this court's precedence that the statute is open to interpretation. Does that answer your question? Yes. Thank you. Are there any other questions? Then I thank you for your time and we ask that this court affirm. Thank you. Your Honor, I'd like to correct one issue that Ms. Kelly suggested that there was an argument regarding the sixth application not having support in the fourth through the first. That issue regarding the sixth was not raised. What she is saying is true for the fifth application, but this was not part of the record and it was never raised. If it was an issue, it should have been raised. But more importantly, she's arguing a point on 112 for the fifth application that was not an issue as stated by the PTAB. So all of her discussion about how the sixth application wasn't supported was really that the fifth application was not supported. And if you'll look at footnote two of the solicitor's brief, that will become clear because she says they added glycine. Well, the claims in the fifth application that deal and embrace glycine with this substance, you know, that wasn't part of the original filing. So let's look at some of those other issues that we want to touch on. The legal definition of entitlement, which is what is used by the statute, treats that entitlement to be granted immediately upon meeting the legal requirements. There's no need for some examination. Our reply brief covers this in pages 10 through 13 where it quotes Black's Law Dictionary and says what entitlement means. It is something that it's given to you and somebody can challenge it later on, but it's given to you by way of a placeholder. It's a placeholder when you file your application and you're given, you're entitled to rely on that placeholder and other people that the public that looks at that are entitled to rely on that placeholder. It's not proven at that point. I mean, you can challenge that later and you cannot at a later court case say, look, this has already been determined. You cannot find that I can't claim priority to the very end. You are correct. And the same is true for entitlement. The same is true for 103 obviousness. And the same is true for 102. You can only We have entitlement, but you're already doing vesting. And vesting is not in the statute. Your Honor, that was, if that was what was taken, it was inarticulate on our part. When you look at the reply brief, it's quite clear that we don't mean vested forever. You could always discount it. You could always get rid of the 6th application. If you said in the 6th application, we no longer claim priority. But the 6th application was effectively filed more than 11 years before this change came. And more than 11 years, it's better to follow Judge Lori's, when he was speaking for this court, the idea that once the criteria of 120 are met, the applicant shall, without exception, receive the benefit. You effectively step into those shoes. Now, in terms of your question, Judge Prose, regarding, you know, what if a patent already issued? And the PTO's position that, well, if the patent had already issued, it would still be a problem. Well, if that's the case, what that really means is that there's a new way to extend your term. Even if your patent issues and you've got a license and everything like that until the end of the term, you can just take one of those intermediates and you can kill the priority. And once you kill the priority, your new patent goes all the way back. I mean, that's just not a good economic system. We're beyond the time if you have one final quick point. I'm sorry. If you have one final quick point. Your Honor, there's no requirement that all the intermediate applications forever and always retain the same claim priority. Thank you. We thank both sides. The case is submitted.